**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> SHA-RON HAINES, *Defendant-Appellant*. | No. 17-10059 <br><br> D.C. No. 2:14-cr-00264-APG-VCF-2 <br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted January 17, 2019
San Francisco, California

Filed March 14, 2019

Before: J. Clifford Wallace and Michelle T. Friedland,
Circuit Judges, and Lynn S. Adelman,[*] District Judge.

Opinion by Judge Adelman

---

[*] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed the district court's judgment in a case in which the defendant was convicted of conspiracy to commit sex trafficking of a minor, sex trafficking of a minor, conspiracy to transport a minor to engage in prostitution, and transporting a minor to engage in prostitution.

At trial, the defendant sought to question minor J.C. about her prior prostitution activities (which apparently did not involve a pimp), arguing that this evidence was relevant to, among other things, whether he recruited or encouraged her to engage in prostitution on this occasion. The panel held that the district court did not err by excluding the testimony under Fed. R. Evid. 412, the "rape shield" rule. The panel rejected the defendant's contention that evidence of J.C.'s prior prostitution activities should have been admitted under the exception in Rule 412(b)(1)(C) for "evidence whose exclusion would violate [his] constitutional rights"—here, his due process right to present a complete defense and his Sixth Amendment right to confront witnesses. The panel saw no reason to depart from persuasive authorities holding that a defense such as the one the defendant sought to present—that he had no intent to, and did not, pimp out J.C.—triggers the exception. The panel also held that the applicability of Rule 412 should not depend on the alleged victim's desire to testify. The panel concluded that even if the district court misapplied Rule 412, any error would be

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

harmless.  The panel held that the defendant's arguments that the government opened the door to testimony about J.C.'s prior activities lacked merit.

The panel addressed other arguments in a separate memorandum disposition.

## COUNSEL

Karen A. Connolly (argued), Karen A. Connolly, Ltd., Las Vegas, Nevada, for Defendant-Appellant.

Vijay Shanker (argued), United States Department of Justice, Criminal Division, Appellate Section, Washington D.C., for Plaintiff-Appellee.

## OPINION

ADELMAN, District Judge:

Sha-Ron Haines appeals his convictions for conspiracy to commit sex trafficking of a minor, sex trafficking of a minor, conspiracy to transport a minor to engage in prostitution, and transporting a minor to engage in prostitution.  We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.

The government alleged that Haines and his friend Tyral King transported two minor females, J.C. (age 15) and A.S. (age 17), from Nevada to California to prostitute them, with J.C. working for Haines and A.S. working for King.  The

girls found "dates" by walking a "track" where men picked up prostitutes and through ads posted on a website called "Backpage.com." King and Haines would drop the girls off at their dates and return to pick them up afterwards.

J.C. initially cooperated with the government's investigation, albeit reluctantly. She testified before the grand jury that ultimately indicted Haines and King that she worked for Haines and gave him the money she earned from prostitution. Prior to trial, however, her account changed. J.C. then claimed that she initially implicated Haines due to pressure from the investigating detective to testify in exchange for release from juvenile detention. This change may have been prompted by a jailhouse phone call in which Haines advised J.C. to make herself unavailable to testify at trial, of which the government later found a recording.

Whatever the reason, at trial J.C. testified that she worked independently, that she kept her earnings, and that her prior grand jury testimony to the contrary was false. The government impeached J.C. with her previous testimony. *See* Fed. R. Evid. 801(d)(1)(A) (authorizing the admission of prior inconsistent statements by testifying witnesses as substantive evidence if the prior statements were given under oath). The government also presented testimony from King, who pleaded guilty and agreed to cooperate with the government, that J.C. worked for Haines and gave Haines her prostitution earnings.

The jury convicted Haines on all counts. The district court sentenced him to 156 months in prison.

## II.

Haines's defense at trial was that he was merely along for the ride and did not act as J.C.'s pimp. In support of that

defense, he sought to question J.C. about her prior prostitution activities (which apparently did not involve a pimp), arguing that this evidence was relevant to, among other things, whether he recruited or encouraged her to engage in prostitution on this occasion. The district court excluded the testimony under Federal Rule of Evidence 412, the "rape shield" rule.

We review a district court's evidentiary rulings for abuse of discretion, though we review de novo the district court's interpretation of the Federal Rules of Evidence. *United States v. Kahre*, 737 F.3d 554, 565 (9th Cir. 2013). We also review de novo whether a district court's evidentiary rulings violated a defendant's constitutional rights. *United States v. Laursen*, 847 F.3d 1026, 1031 (9th Cir. 2017).

Rule 412 provides, in pertinent part:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's sexual predisposition.
>
> (b) Exceptions.
>
> > (1) Criminal Cases. The court may admit the following evidence in a criminal case:
> >
> > > (A) evidence of specific instances of a victim's sexual behavior, if offered

to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

(C) evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412.

The district court correctly determined that the Rule applied. As our sister circuits have noted, sex trafficking cases involve "alleged sexual misconduct," *see United States v. Wardlow*, 830 F.3d 817, 820 (8th Cir. 2016) (applying Rule 412 in § 2423 prosecution); *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009) (applying Rule 412 in § 1591 prosecution), and evidence of a trafficking victim's pre- or post-indictment involvement in prostitution implicates her "other sexual behavior" or "sexual predisposition," *see United States v. Lockhart*, 844 F.3d 501, 509 (5th Cir. 2016). Consistent with this construction of the Rule, courts have routinely barred evidence of a sex trafficking victim's other prostitution activities. *See, e.g.*, *United States v. Betts*, 911 F.3d 523, 528–29 (8th Cir. 2018); *United States v. Groce*, 891 F.3d 260, 267–68 (7th Cir. 2018); *United States v. Carson*, 870 F.3d 584, 593 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 2011 (2018); *United States v. Gemma*, 818 F.3d 23, 34–35 (1st Cir. 2016); *Lockhart*, 844 F.3d at 510; *Elbert*, 561 F.3d at 777; *cf. United States v. Backman*, 817 F.3d 662, 670

(9th Cir. 2016) (affirming exclusion for failure to comply with the Rule's procedural requirements but expressing "doubt that evidence that the victim engaged in commercial sex acts *after* she had been coerced into prostitution has a bearing on whether Defendant earlier took coercive actions").

Haines argues that evidence of J.C.'s prior prostitution activities should have been admitted under the exception to Rule 412 for "evidence whose exclusion would violate the defendant's constitutional rights"—here, his due process right to present a complete defense and his Sixth Amendment right to confront witnesses. But in cases involving adult victims forced or coerced into prostitution, courts have rejected such arguments, concluding that evidence of other prostitution activity has little or no relevance. Courts have reasoned that just because a victim agreed to engage in sex for money on other occasions does not mean she consented to, e.g., being beaten or having her earnings confiscated by the defendant. *See United States v. Rivera*, 799 F.3d 180, 185–86 (2d Cir. 2015); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012).

Haines argues that his case is different because his defense was not consent but rather that he had no intent to, and did not, pimp out J.C. However, he makes no attempt to distinguish *Elbert*, a case, like his, involving a minor victim (as to which the government need not show force, fraud, or coercion to prove a violation). The *Elbert* court rejected the argument that evidence of a child-victim's other sexual behavior should be admitted to rebut the allegation that the defendant recruited the victim to engage in commercial sex acts. The court explained:

What Elbert fails to recognize is the evidence he wishes to admit does not provide a defense for the crime with which he was charged and convicted. Elbert repeatedly argues evidence of the victims' prior acts of prostitution demonstrates he did not cause them to engage in commercial sex acts. This argument relies upon an improper construction of the phrase "caused to engage." 18 U.S.C. § 1591(a). Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. *Id.* Instead, the government was only required to prove Elbert knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts. *Id.* Whether the children engaged in acts of prostitution before or after their encounters with Elbert is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act.

561 F.3d at 777. The court thus rejected Elbert's argument that this was "evidence [whose] exclusion . . . would violate the defendant's constitutional rights" and thus within the exception contained in Rule 412. *Id.* at 776–77 (quoting Fed. R. Evid. 412(b)(1)(C)).

That J.C. may have prostituted on other occasions on her own does not change the result. In *United States v. Shamsud-Din*, No. 10 CR 927, 2011 U.S. Dist. LEXIS

124449, at *3 (N.D. Ill. Oct. 27, 2011), the defendant sought to admit evidence that the alleged victims prostituted at other times without a pimp. In a passage that applies equally to this case, the court, ruling pre-trial, stated:

> Defendant contends that his defense is broader than that in *Elbert* because his proffered evidence here offers a complete defense to the charges. He specifically asserts that he is arguing that the proffered evidence shows that Victims A and B engaged in the prostitution on their own and without his involvement or knowledge. His argument is a distinction without a difference. Defendant is free to explore whether the Victims engaged in the prostitution activities at issue in this case on their own, rather than with his assistance. He can also question the Victims about their computer skills and whether or not they are familiar with Craigslist, without asking about using it for advertising prior or subsequent prostitution activities. Defendant cannot, however, inquire into other prostitution activities. Such evidence of prior and post prostitution activities is the equivalent of propensity evidence and irrelevant to the charges.

*Id.* at *11.

Haines cites no case holding that a defense such as the one he sought to present here triggers the exception in Rule

412. And we see no reason to depart from the persuasive authorities set forth above that held to the contrary.[1]

What *does* make this case somewhat different from those cited above is J.C.'s posture at trial. As Haines notes, Rule 412 aims to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." *See* Fed. R. Evid. 412, Advisory Committee's Notes to 1994 Amendments ("Advisory Committee Notes"). Haines contends that in his case J.C. actually *wanted* to testify about her prior acts of prostitution, and that the government used Rule 412 not as a shield to protect a cooperative victim's privacy, but as a sword to obtain a conviction by precluding him from eliciting favorable testimony from a recalcitrant witness. The parties do not cite—and we have not found—a case discussing applicability of the Rule to a witness hostile to the government.

For several reasons, however, we conclude that the applicability of the Rule should not depend on the alleged victim's desire to testify. First, Rule 412 is a rule of exclusion containing three specific exceptions in criminal cases; the victim's desire to testify or waive the protections of the Rule is not one of them. Second, to the extent that Rule 412 also serves the purpose of keeping irrelevant,

---

[1] For the same reasons, we reject Haines's argument that his right to present a defense was violated when, after the government challenged the credibility of J.C.'s trial testimony, he was not permitted to "rehabilitate" her with irrelevant and otherwise inadmissible evidence about her prior sexual behavior. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (explaining that the right to present a defense is not unfettered, and law-makers retain broad latitude to establish rules excluding evidence from criminal trials).

prejudicial, and/or inflammatory evidence from the jury, it should not matter whether the witness *wants* its protection; the district court enforces the Rule to ensure that the jury decides the case based on proper considerations. *See* Advisory Committee Notes (noting that the Rule prevents "the infusion of sexual innuendo into the factfinding process"); *Privacy of Rape Victims: Hearing Before the Subcomm. on Crim. J. of the H. Comm. on the Judiciary on H.R. 14666 and Other Bills*, 94th Cong. 41 (1976) (statement of Mary Ann Largen, National Organization of Women) ("[Proposed Rule 412] assures that highly inflammatory and arguably irrelevant matters will not be injected."). Third, allowing the victim's wishes to control opens the door to mischief. Indeed, in this case the government suspected that J.C. changed her testimony based on pressure from Haines.

Finally, even if the district court misapplied Rule 412 here, and we do not believe it did, any error would be harmless. *See United States v. Preston*, 873 F.3d 829, 835 (9th Cir. 2017) (noting that evidentiary rulings are subject to harmless error review); *United States v. Nielson*, 371 F.3d 574, 581 (9th Cir. 2004) ("Confrontation Clause violations are subject to harmless error analysis[.]"); *see also United States v. Torres*, 794 F.3d 1053, 1062–63 (9th Cir. 2015) (holding that an evidentiary ruling excluding evidence desired by the defense did not violate the right to present a complete defense because the evidence would not have substantially furthered the defense's trial theories). Haines was able to present his theory of the case through J.C.'s testimony that he was not her pimp during the trip to California, that she engaged in the charged acts of prostitution on her own and without his encouragement or involvement, and that she kept the money she earned. Haines was also able to argue to the jury in closing that this trip to California was not J.C.'s "first rodeo," that she knew

where the track was, and that she knew how to place ads on Backpage. The district court also gave the jury a "mere presence" instruction in support of the defense, explaining that to convict in this case "[t]he defendant must be a participant and not merely a knowing spectator," which Haines incorporated into his argument. It is hard to see how additional testimony about J.C.'s other "solo" prostitution-related activities would have materially aided the defense. *See United States v. Hofus*, 598 F.3d 1171, 1180 (9th Cir. 2010) (holding that limitation on testimony from key witness did not violate the defendant's ability to present a defense, where counsel was still able to argue his theory of the case).

We have considered Haines's additional arguments that the government opened the door to testimony about J.C.'s prior activities, but none has merit. The government did not elicit testimony suggesting that Haines introduced J.C. to prostitution or that she was, in the district court's words, "an innocent lamb led to the slaughter." The district court took the issue seriously, warning the government that it could open the door depending on how it presented its case. We hold there was no abuse of discretion in its rulings.

Haines argues that his defense was prejudiced by the district court's refusal to allow him to recall J.C. to ask her about her prior prostitution activities after King testified that Haines, A.S., and J.C. came up with the idea to prostitute while they were at a pool party together. As the district court noted in denying Haines's request, J.C. had already testified that she and A.S. came up with the idea, without Haines's involvement, and the jury would have to decide who was telling the truth, J.C. or King. The government did not open the door simply by presenting evidence contrary to J.C.'s trial testimony.

## III.

For the foregoing reasons, and those stated in our separate memorandum disposition addressing Haines's other arguments, we affirm the district court's judgment.

**AFFIRMED.**